IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **Rusty Merritte Dunbar, #294996**, ) | Civil Action No. 9:16-0482-PMD-BM |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| **Warden of Lieber Correctional** ) | |
| **Institution**, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

The pro se Petitioner brought this action seeking relief pursuant to Title 28, United States Code, Section 2254. On June 14, 2016, the Respondent filed a motion for summary judgment. As the Petitioner is proceeding pro se, a Roseboro Order was entered by the Court on June 15, 2016, advising Petitioner of the importance of a dispositive motion and of the need for him to file an adequate response. Petitioner was specifically advised that if he failed to file a properly supported response, the Respondent's motion may be granted, thereby ending his case.

However, notwithstanding the specific warning and instructions as set forth in the Court's Roseboro order, the Petitioner failed to respond to the motion, or to contact the Court in any way. Accordingly, a Report and Recommendation was issued on July 28, 2016, recommending dismissal of this action for failure to prosecute. Petitioner then belatedly filed a request for additional time to respond to the pending motion on August 3, 2016, following which the undersigned vacated the Report and Recommendation and granted Petitioner an extension until August 29, 2016 to file

1



a response. However, on the day his response was due, Petitioner placed a second request in the prison mail for an additional thirty days to respond to "better develop" the issues. The Court then granted Petitioner's motion for an additional extension of time to respond until September 30, 2016. However, Petitioner was specifically instructed in that order that if no response was filed by the deadline, the Clerk would be instructed to reinstate the Report and Recommendation recommending dismissal for failure to prosecute and forward the case to the District Judge for disposition. Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989), cert. denied sub nom, Ballard v. Volunteers of America, 493 U.S. 1084 (1990) [Magistrate Judge's prior explicit warning that a recommendation of dismissal would result from plaintiff failing to obey his order was proper grounds for the district court to dismiss suit when plaintiff did not comply despite warning].[1]

The deadline for Petitioner to respond to Respondent's motion for summary judgment has now again expired, and despite the extensions of time granted and the warnings to Petitioner of the potential consequences of his failure to respond, he has still not filed any response in opposition to the motion for summary judgment, which is now before the Court for disposition.[2]

## Procedural History

Petitioner was indicted in Aiken County in January 2009 for kidnapping [Indictment

---

[1] After a litigant has received one explicit warning as to the consequences of failing to timely comply with an order of a Magistrate Judge, and has failed to respond to that order, the district court may, under Fed.R.Civ.P. 41(b), dismiss the complaint based upon the litigant's failure to comply with that court order. See Simpson v. Welch, 900 F.2d 33, 35-36 (4th Cir.1990); see also Ballard, 882 F.2d at 95-96 [holding that district court's dismissal following an explicit and reasonable warning was not an abuse of discretion].

[2] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c) and (e), D.S.C. The Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



No. 09-GS-02-0093], first-degree burglary [Indictment No. 09-GS-02-0092], armed robbery [Indictment No. 09-GS-02-0091], and possession of a knife during the commission of a violent crime [Indictment No. 09-GS-02-0090]. (R.pp. 694-695, 699-700, 704-705, 709-710). Petitioner was represented by M. Justin Mills, Esquire, and after a jury trial on December 15-17, 2009, Petitioner was found guilty as charged and sentenced to thirty (30) years imprisonment on the kidnapping charge, thirty (30) years imprisonment on the first-degree burglary charge, thirty (30) years imprisonment on the armed robbery charge, and five (5) years imprisonment for possession of a weapon during the commission of a violent crime, with all sentences to be served concurrently. (R.pp. 494-495, 503). Petitioner filed a timely appeal, as well as an Application for Post Conviction Relief ("APCR"), both of which were denied. (R.pp. 506-541, 680-691); see also Court Docket Nos. 19-1, 19-2, 19-3, 19-4, 19-5, 19-7, and 19-8.

In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following issues:

> **Ground One:** Counsel opened the door for the State to use Crack Cocaine as a motive to commit the crimes charged after successfully objecting to such.
>
> a. Counsel objected to the State's questioning of Jerry Thornton won on the issue of irrelevance. Trial Court gave curative instructions and instructed the jury to disregard the testimony. However, during cross, counsel revisited the previously objected to testimony and the trial court, *sua sponte* threw counsel's objection out the window. The State was then able to use a (1) one time, unrelated purchase of crack cocaine as motive to conduct the crimes charged. Tr.p. 104-113, ll. 1-25.
>
> **Ground Two:** Counsel was ineffective for failing to request an alibi charge when the sole defense was that of an alibi.
>
> a. Petitioner presented two (2) alibi witnesses [sic] who's testimony corroborated Petitioner's testimony that he was at his brother's house at the time Mr. Hynes was robbed.



See Petition [Court Docket No. 1], pp. 6, 8.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

In Grounds One and Two of the Petition, Petitioner raises ineffective assistance of trial counsel claims for 1) counsel opening the door for the State to use crack cocaine as a motive to commit the crimes charged after successfully objecting to such; and 2) counsel failing to request an alibi charge from the sole defense was that of an alibi. These issues were raised in Petitioner's APCR, where Petitioner had the burden of proving the allegations in his petition, and were exhausted pursuant to Petitioner's appeal of the PCR order to the state Supreme Court. Butler v. State, 334 S.E.2d 813, 814 (S.C. 1985), cert. denied, 474 U.S. 1094 (1986). The PCR court rejected these claims, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. See Dunbar v. State of South Carolina, No. 2012-CP-02-0795. (R.pp. 683-687).



Substantial deference is to be given to the state court's findings of fact. Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001). However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. Strickland v. Washington, 466 U.S. 668, 698 (1984); Pruett v. Thompson, 996 F.2d. 1560, 1568 (4th Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)).

Nevertheless, since Petitioner's ineffective assistance of counsel claims were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 120 S.Ct. 1495 (2000). See Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a



decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. As noted by the Supreme Court, the

> AEDPA's standard is intentionally " ' "difficult to meet." ' " White v. Woodall, 572 U.S. ___, 134 S.Ct. 1697, 1702 (2014) (quoting Metrish v. Lancaster, 569 U.S. ___, 133 S.Ct. 1781, 1786 (2013)). We have explained that " 'clearly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." White, 572 U.S., at ___, 134 S.Ct., at 1702 (some internal quotation marks omitted). "And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." Id., at ___, 134 S.Ct., at 1702 (same). To satisfy this high bar, a habeas petitioner is required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86 (2011).
>
> Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a "presumption that state courts know and follow the law." Woodford v. Visciotti, 537 U.S. 19, 24(2002) (*per curiam*). When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington, supra, at 102–103, 131 S.Ct. 770 (internal quotation marks omitted). This is especially true for claims of ineffective assistance of counsel, where AEDPA review must be " ' "doubly deferential" ' " in order to afford "both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 571 U.S. ___, 134 S.Ct. 10, 13 (2013) (quoting Cullen v. Pinholster, 563 U.S. 170, ___, 131 S.Ct. 1388, 1403 (2011)).

Woods v. Donald, 135 S.Ct. 1372, 1376 (2015).

Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims.

> Where allegations of ineffective assistance of counsel are made, the question becomes



"whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694. In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. In order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Mazzell v. Evatt, 88 F.3d 263, 269 (4th Cir. 1996).

Petitioner has failed to meet his burden of showing that his counsel was ineffective under this standard. Indeed, as noted, Petitioner has failed to even file a response to the Respondent's motion for summary judgment. Smith v. State of North Carolina, 528 F.2d 807, 809 (4th Cir. 1975)[Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]. With respect to Petitioner's claim that his counsel was ineffective for opening the door on his drug use as a motive for the crime by questioning witness Jerry Thornton about drug usage, the record reflects that Thornton testified on direct examination that on the morning of the crime he, Petitioner and Christopher Herndon had been drinking and then got some crack cocaine. (R.pp. 102-104). Petitioner's counsel objected to the relevance of this testimony, and the trial court sustained the objection and told the jury to disregard the testimony. (R.p. 104). However, when Thornton later testified that he had dropped Petitioner and Herndon off in front of the victim's house to get drugs, Petitioner's counsel's objection to that testimony was overruled. (R.p. 105). Then, during cross



examination, Petitioner's counsel asked Thornton why he had left Petitioner and Herndon when they went into the victim's house to get the drugs, to which Thornton responded "I don't wait around on nobody doing nothing like that, you know, getting drugs or nothing like that. I don't like to be in spots like that." (R.p. 113). Petitioner's counsel then referenced the three of them having earlier obtained drugs as a way of calling into question Thornton's credibility about leaving Petitioner and Herndon there, because he was trying to separate himself from the drug deal. This strategy appeared to work, because Thornton admitted that he had already been doing drugs with them and therefore potentially cast doubt on this testimony. (R.p. 113). However, after that line of questioning the trial court stated "[h]old on. You just objected to all of that and now you're right back into it. So the objection is out the window. Go ahead." (R.p. 113).

Petitioner claims ineffective assistance of counsel on the ground that counsel's error threw his previously sustained objection "out the window" and allowed the earlier unrelated purchase of crack to be used as a motive for the later burglary. However, even without Petitioner's counsel trying to tie Thornton to the drug use earlier in the afternoon and opening the door for testimony on that issue, the trial court had already ovrruled counsel's objection to testimony about the later drug activity and had allowed testimony regarding drugs as being the motive for Petitioner and Herndon going to the victim's house. (R.p. 105). Further, during Petitioner's cross examination at his PCR hearing, Petitioner himself admitted that he had testified about his use of crack in his direct testimony at trial. (R.pp. 605-607); see also (R.pp. 395-396). Indeed, an examination of the trial transcript shows Petitioner testified at length about buying drugs and smoking dope on the day of the incident at issue, and that he had even purchased cocaine from the victim on several occasions. (R.pp. 394-396, 399, 401-403, 406-407). The trial record supports the PCR court's finding that Petitioner was



expansive in his testimony regarding his drug use. (R.p. 684). Additionally, Herndon also testified that he was with Petitioner, Thornton, and Petitioner's girlfriend and that they all went to purchase crack; and that after going somewhere to drink that he and Petitioner came up with the plan to rob Daniel Hynes (the victim). (R.pp. 185, 187, 191). Herndon testified that when they got in Hynes' house, that he looked for drugs to take. (R.p. 194). Herndon also testified that during the robbery he asked Hynes where the drugs and money were located. (R.p. 196). Therefore, Herndon's testimony showed his motive for the crimes was based on seeking drugs and that Petitioner was with him. Another witness, Laura Smith, who was Petitioner's girlfriend and an alibi witness, also testified at length about Petitioner's drug use. (R.pp. 368-370-, 373-377, 381).

At the PCR hearing, Petitioner's trial counsel testified that when he was questioning Thornton that he was just recapping what they had discussed and that it was a mistake for him to mention crack cocaine. (R.pp. 614, 616). However, trial counsel also testified that even if Petitioner's prior drug use that day had not come out during his cross examination of Thornton, that he believed that Herndon was going to testify that he was using drugs, that that was the motivation for the robbery, and that Petitioner was with him. (R.pp. 615-616). As previously discussed, Herndon did just that during his testimony. Furthermore, Herndon also testified regarding what occurred after the incident and when he confessed his and Petitioner's involvement to the police. (R.pp. 202-205). Therefore, even assuming arguendo that Petitioner's counsel was deficient by raising the issue of the group's earlier obtaining drugs during Herndon's cross-examination, there has been no showing of prejudice, as the Court had already ruled that testimony concerning drugs as being the motive for the crime was admissible. Accordingly, Petitioner has not shown that he was prejudiced by the additional testimony on his drug use, or that the outcome of his trial would have



been different if his counsel had not raised that issue with Thornton.

As for Petitioner's claim that his counsel should have requested an alibi charge, the PCR court found that Petitioner failed to show prejudice from his counsel's failure to request an alibi charge. The undersigned can discern no reversible error in this finding. Petitioner had two (2) alibi witnesses testify at trial - Tommy Dunbar, his brother, and Smith. (R.pp. 362-390). Counsel testified at the PCR hearing that it was just an oversight that he did not request an alibi instruction. (R.p. 619). However, even assuming that counsel was deficient in failing to request an alibi charge, Petitioner has failed to show the necessary prejudice, as Petitioner's counsel highlighted this testimony during his closing argument, noting that Smith and Petitioner's brother had both testified that they were with Petitioner during the time of the incident at Petitioner's brother's house; (R.p. 446); and during the jury charge, the judge stressed the State's burden of proof beyond a reasonable doubt. (R.pp. 475-476, 481-486). The judge also charged the jury on their job to determine the credibility of the witnesses and who to believe. (R.pp. 478-479).

The PCR court found that because the jurors could believe *either* the State's identification witnesses, *or* they could believe the alibi witnesses, *but not both*, the crucial issue in this case was credibility. The PCR court also found that witness credibility was argued by both sides and was thoroughly charged to the jury. (R.p. 685). The record confirms this factual finding, and as has been noted by another judge in this District:

> [T]he Supreme Court has never held that the failure to request an alibi charge constitutes ineffective assistance of counsel, so the PCR court's rejection of this claim cannot be said to be contrary to or an unreasonable application of clearly established *federal* law. See generally Epps v. Bazzle, No. CIVA 907–CV–3113–RBH, 2008 WL 2563151, at *9 (D.S.C. June 23, 2008) ("A state court adjudication is contrary to clearly established federal law only if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court



>     decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. If the United States Supreme Court has never addressed the claim presented to the state court, then, the state court decision cannot be said to have unreasonabl[y] appli[ed] clearly established Federal law [under § 2254(d)(1).]" (alterations in original) (internal quotation marks and citation omitted)).

Hope v. Cartledge, No. 14-3571, 2015 WL 4644536, at *5 (D.S.C. Aug. 3, 2015); see also Gibbs v. Stevenson, No. 13-3382, 2015 WL 7188341, at * 4 (D.S.C. Nov. 10, 2015)[same].  The PCR court also noted that this case is similar to Gibbs v. State, 744 S.E.2d 170 (S.C. 2013), where the South Carolina Supreme Court found that although trial counsel was deficient for failing to ensure an alibi charge was given, the applicant had failed to meet his burden of showing prejudice from this deficiency where the PCR court relied on the jury charge as a whole to support its finding of no prejudice based on the clarity of the jury charge requiring the State to prove identity beyond a reasonable doubt.  See also Ford v. State, 442 S.E.2d 604 (S.C. 1994) [where the South Carolina Supreme Court found no prejudice where there was not a reasonable probability that the outcome of the trial would have been different had an alibi charge been given].

        Therefore, Petitioner has not shown that the findings and rulings of the state courts were unreasonable, or that his counsel was ineffective.  Evans, 220 F.3d at 312; Williams v. Taylor, supra; Strickland v. Washington, supra.; Greene v. Fisher, 132 S.Ct. 38, 43 (2011)[observing that AEDPA's "standard of 'contrary to, or involv[ing] an unreasonable application of, clearly established Federal law' is difficult to meet, because [its purpose] is to ensure that federal habeas relief functions as a 'guard against extreme malfunctions in the state criminal justice systems', and not as a means of error correction"].  These claims should be dismissed.

## Conclusion

        Based on the foregoing, it is recommended that the Respondent's motion for summary



judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

        The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 13, 2016
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

>  Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

